

**FILED**
**DISTRICT COURT OF GUAM**

DEC - 9 2005

**MARY L.M. MORAN**
**CLERK OF COURT**



DISTRICT COURT OF GUAM

TERRITORY OF GUAM

Civil Case No. 05-00020

TANYA SHIROMA,

Plaintiff,

vs.

GOVERNMENT OF GUAM; AND
GUAM CUSTOMS AND
QUARANTINE AGENCY,

Defendants.

**ORDER RE: DEFENDANTS'
MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss. Pursuant to Local Civil Rule 7.1(e)(3), this matter is appropriate for decision without the need for oral argument.[1] After reviewing the filings, as well as relevant caselaw and authority, the Court hereby **DENIES** the defendants' motion. The Court issues the following decision.

**BACKGROUND**

This action was brought by Tanya Shiroma ("plaintiff"), pursuant to Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* The plaintiff claims that while she was employed as a clerk at Guam Customs & Quarantine Agency she was sexually harassed by her immediate supervisor, Mr. Joseph Manibusan ("Mr. Manibusan"). The plaintiff states that the discrimination lasted from May 2001 to approximately February 20, 2002.

---

[1] Local Civ.R. 7.1(e)(3) states "[i]n cases where the parties have requested oral argument, such oral argument may be taken off calendar by Order of the Court, in the discretion of the Court, and a decision rendered on the basis of the written materials on file."

1        The plaintiff asserts that Mr. Manibusan propositioned her and made remarks of a sexual

2   nature. In addition the plaintiff claims Mr. Manibusan often leered at her and make sounds that she

3   found offensive. Complaint, at ¶ 6. Sometime prior to February 13, 2002, the plaintiff complained

4   about the harassment to another supervisor in her division, Ms. Annette Shimizu ("Ms. Shimizu").

5   Declaration of Tanya Shiroma, at ¶ 8. On or about February 13, 2002, Mr. Manibusan came into

6   the room where the plaintiff was sitting and locked the door, while making sexual advances

7   towards her. *Id.* at ¶ 9. The harassment culminated in an incident that occurred on February 20,

8   2002, when Mr. Manibusan allegedly rested his hand on the plaintiff's upper leg. Complaint, at

9   ¶ 6.

10       When the plaintiff reported Mr. Manibusan's behavior to her employers, her employers

11  decided to transfer her from the Special Enforcement Division where she was assigned to the

12  Office of the Chief of Customs. *See* Motion to Dismiss, Exhibit F. However, the plaintiff's

13  husband, Blu Shiroma, who also worked for the defendant complained about the transfer. *Id.* In

14  response to his complaint, the plaintiff's employers decided that Mr. Manibusan should be

15  transferred to a different division. The plaintiff never returned to work after February 20, 2002.

16       Thereafter, the Guam Workers' Compensation Commission ("Commission") found that the

17  alleged touching of the plaintiff by her supervisor was an "accident" and any resulting "injury" the

18  plaintiff may have suffered was work-related. In its April 26, 2002-letter to the plaintiff, the

19  Commission's Director stated "[y]our injuries are presumed to have arisen out of and were in the

20  course of the employment." *See* Motion to Dismiss, Exhibit A. On June 24, 2005, the plaintiff

21  filed the above captioned complaint.

22                                      **DISCUSSION**

23       The defendants move the Court to dismiss the action pursuant to Rule 12(b)(1) and Rule

24  12(b)(6) of the Federal Rules of Civil Procedure and under Rule 56. A motion to dismiss under

25  Rule 12(b)(6) must not be granted "unless it appears beyond doubt that the plaintiff can prove no

26  set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S.

27  41, 45-46, 78 S. Ct. 99, 102 (1957). A motion to dismiss for failure to state a claim is viewed with

28  disfavor and is rarely granted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)

(citing *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274) (9th Cir. 1986), *cert. denied*, 485 U.S. 940, 108 S. Ct. 1120 (1988)(overruled on other grounds)). All allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000), *cert. denied*, 532 U.S. 1021, 121 S. Ct. 1962 (2001). The Court's role at this stage of the proceedings is not to evaluate the strengths or weaknesses of the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

### A. Exclusivity of Workers' Compensation Benefits

The defendants first seek dismissal of paragraphs 15, 16 and 17 of the plaintiff's complaint. The defendants claim that those portions of the complaint should be dismissed because Guam's Workers' Compensation Law has an exclusivity provision which precludes claims under Title VII employment statutes.[2] Since the plaintiff received Workers' compensation benefits as a result of the alleged sexual harassment, the defendants claim she cannot now recover under Title VII. In other words, the plaintiff's receipt of Workers' compensation benefits renders them the "exclusive" form of compensation she may receive for her work-related injuries.

Guam's Workers' Compensation Law compensates employees for certain lost wages and medical costs that are incurred as a result of "injury" sustained in the performance of their duties. 22 Guam Code Ann §§ 9101-9145. Injury is defined as an "accidental injury or death arising out of and in the course of employment." *Id.* at § 9103. The law expressly provides, in part, that "[t]he

---

[2]Paragraphs 15, 16, and 17 of the Complaint state as follows:

15. As the proximate result of the aforementioned acts of harassment including the unwanted physical contact, Plaintiff suffered outrage, shock, humiliation and emotional trauma and injury which as been medically diagnosed and which was reasonably likely to occur based on the harassment experienced and accordingly Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

16. As a further proximate result of the aforementioned acts of harassment including the unwanted physical contact and the proximity caused termination of her employment, Plaintiff is entitled to back and future wages in an amount to be proven at trial.

17. As a further proximate result of the aforementioned acts of harassment including the unwanted physical contact, Plaintiff is entitled to punitive damages as the actions of the defendants were with malice and/or reckless disregard of Federal Statutory laws.

liability of an employer prescribed in § 9104 shall be exclusive and in place of all other liability of such employer to the employee ... or anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death." *Id.* at § 9106.

By contrast, Title VII compensates employees who have suffered from unlawful discrimination on, among other things, the basis of their sex. *See* 42 U.S.C. § 2000e, *et. seq.* Employees who have suffered from such unlawful discrimination are entitled to equitable relief, including, but not limited to, reinstatement with or without back pay. *Id.* at § 2000e-5(g)(1).

As noted above, the defendants argue that the plaintiff is barred from receiving any additional recovery by the exclusivity provisions of Guam's Workers' Compensation Law. The Court, however, rejects this argument. Although the law may prevent the plaintiff from receiving an award of additional payments for a work-related "injury" as defined, the provisions of the law do not prevent an award of additional payments for harms that fall outside of its definition of "injury." Sexual harassment is not an accident but rather a form of discrimination. Any compensation a jury may award the plaintiff would be solely for the harm she suffered from sex discrimination, not for an "injury" within the meaning of the Workers' Compensation Law.

To find otherwise would be in disregard of the policy emanating from Title VII of the Civil Rights Act (the "Act"). The underlying policy of the Act is to charge employers with maintaining a workplace free from sexual harassment, *Burlington Industries v. Ellerth*, 524 U.S. 742, 764 (1998)("Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms."). In contrast, workers' compensation "is designed to provide relatively quick compensation for job related injuries in return for a limit on the remedies which might otherwise be available," *Barth v. Firestone Tire and Rubber Co.,* 661 F.Supp. 193, 197 (N.D.Cal.,1987). To apply the exclusivity rule of Guam's Workers' Compensation Law in this instance would be to ignore the clear distinction between the two policies. Accordingly, the exclusivity provision of Guam's Workers' Compensation Law is not applicable.[3]

---

[3]However, the Court also recognizes that Title VII prohibits the plaintiff from receiving double recovery. *See* 42 U.S.C. § 2000e-5(g)(1). A jury award would necessarily have to be offset by the amount of Workers' compensation benefits she received.

### B. Failure to State a Cause of Action.

The defendants next argue that the remainder of the complaint should be dismissed for failure to state a cause of action under Rule (b)(6) of the Federal Rules of Civil Procedure. Specifically, the defendants claim that the complaint fails to establish a prima facie claim of sexual harassment based on a hostile work environment.

Title VII prohibits discriminatory practices by an employer. *See* 42 U.S.C. § 2000e-2. Sexual harassment is a form of sex discrimination that is prohibited under the statute. *Meritor Sav. Bank v. Vinson*, 47 U.S. 57 (1986). The defendants cite *Kuinin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3rd Cir. 1999) *cert. denied*, 528 U.S. 964 (1999) for the elements to establish a prima facie case of sexual harassment hostile work environment. Under *Kuinin* the plaintiff must prove the following: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person; and (5) the existence of respondeat superior liability. *Kuinin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3rd Cir. 1999) *cert. denied*, 528 U.S. 964 (1999).

The defendants claim that the plaintiff fails to meet these elements in her complaint. For example, the defendants claim that the plaintiff does not allege she was intentionally discriminated against because of her sex. Neither does the plaintiff allege respondeat superior liability or vicarious liability against the defendants. However, the Court notes that the Complaint, while sparse, does allege that the plaintiff was discriminated against on the basis of her "sex and harassed by her supervisor, Joseph Manibusan." Complaint, p. 2. Additionally, the plaintiff's complaint states that the "[d]efendants had notice of the harassment described herein because such harassment was pervasive and obvious and/or was perpetrated by an individual of sufficient rank and position (Plaintiff's supervisor) and ability to hire/fire/discipline/demote or affect these outcomes as to impute liability to Defendants." *Id.*, p. 3. *See Burlington Industries v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775, 806 (1998) (the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority

over the employee.") At this stage of the pleadings, the plaintiff did make allegations sufficient that put the defendants on notice as to her claims. Accordingly, the motion to dismiss on this basis is denied.

### C. Affirmative Defense

In addition, the defendants claim that they have a Title VII affirmative defense as set forth by the Supreme Court in *Burlington Industries*, 524 U.S. 742 (1998), and *Faragher*, 524 U.S. 775, (1998). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Industries*, 524 U.S. at 765 (1998), *Faragher*, 524 U.S. at 807 (1998). However, an employer may not raise the defense if a supervisor takes a tangible employment action against the subordinate employee based on the subordinate's response to the unwelcome sexual advances. *Id.*

In this case, Mr. Manibusan is alleged to have had supervisory authority over plaintiff. Therefore, if plaintiff is able to prove an actionable hostile work environment, the defendants will be vicariously liable to plaintiff. But if the defendants took no tangible employment action against plaintiff, the defendants may assert the affirmative defense described above. The parties disagree over whether any tangible employment action was taken. After the plaintiff reported the February 20, 2002, touching incident by her supervisor, Mr. Manibusan, the defendants' solution was to transfer the plaintiff out of her division. The plaintiff claims that this threat of a reassignment was tangible employment action.

The defendants argue to the contrary. The defendants claim that since the plaintiff never returned to work after that incident, the transfer never actually occurred and no tangible employment action was taken against the plaintiff. In addition, the defendants claim that the proposed transfer would not have had an effect on plaintiff's gross pay or hourly rate of pay. Nor would it have had an effect on the type of work she did.

The Court is not convinced that this issue should be resolved at the pleading stage. The defendants' initial response to the plaintiff's reporting of the alleged harassment was to transfer the

1   plaintiff, not the defendant. The full factual context as to the impact of this decision on the work
2   conditions of the plaintiff and her decision to return to work should be developed in discovery.

3   The next issue is whether the defendants have shown they are entitled to dismissal of this
4   action based upon the two-prong affirmative defense. The first prong the defendants must satisfy
5   is that they exercised reasonable care to prevent and promptly correct any sexually harassing
6   behavior. *Burlington Industries*, 524 U.S. at 765 (1998), *Faragher*; 524 U.S. at 807 (1998). The
7   defendants claim they had protective measures in place before the plaintiff complained. Since
8   January 14, 1994, the defendant, Customs and Quarantine Agency had a sexual harassment policy
9   in effect. The policy explains that an individual who is sexually harassed should immediately
10  report the sexual harassing conduct to the appropriate supervisor. *See* Department of Commerce
11  Sexual Harassment Policy, Exhibit J attached to Motion to Dismiss. In addition, EEO
12  discrimination complaint procedures are set forth in Appendix F of the Personnel Rules and
13  Regulations. *See* Exhibit K.

14  While there may have been protective measures in place, there is some question as to
15  whether the employees were aware of the policies and additionally whether in this instance, the
16  defendants took prompt action once they became aware of the harassment. For example, the
17  plaintiff states that no action was taken after she first reported Mr. Manibusan's conduct to
18  supervisor, Ms. Shimizu before February 13, 2002. *See* Shiroma Decl. at ¶ 8. However, the
19  defendants claim that no action was taken at the urging of the plaintiff herself. The Court finds that
20  this is a material issue of fact better left for the trier of fact to determine.

21  In regard to the second prong, the Court also finds it is an issue for a trier of fact. The
22  defendants must show that the plaintiff employee unreasonably failed to take advantage of any
23  preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
24  *Burlington Industries*, 524 U.S. at 765 (1998), *Faragher*; 524 U.S. at 807 (1998). However, as
25  noted, the plaintiff claims she was unaware of what procedures she was suppose to follow other
26  than telling another supervisor in the same division, which she did.

27  A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.
28  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citing *Hall v. City of Santa*

1 | *Barbara*, 833 F.2d 1270, 1274) (9th Cir. 1986), *cert. denied*, 485 U.S. 940, 108 S. Ct. 1120

2 | (1988)(overruled on other grounds)). The Court's role at this stage of the proceedings is not to

3 | evaluate the strengths or weaknesses of the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94

4 | S. Ct. 1683, 1686 (1974). Here, the Court finds the plaintiff has set forth enough in her Complaint

5 | to survive a Motion to Dismiss.

6 | Lastly, the defendants as an aside request the Court to grant them summary judgment.

7 | However, summary judgment is not appropriate at this early stage of the proceedings when

8 | discovery has not been completed. Accordingly, the request for summary judgment is likewise

9 | denied at this time.

10 | CONCLUSION

11 | Upon consideration of the foregoing, the Court finds that dismissal of this action is

12 | unwarranted. Accordingly, the Court hereby **DENIES** the defendants' Motion to Dismiss with

13 | Prejudice and likewise **DENIES** the defendants' Motion for Summary Judgment.

14 | SO ORDERED this ___ day of December, 2005.

**D. LOWELL JENSEN**[*]
United States Senior District Judge

---

28 | [*]The Honorable D. Lowell Jensen, United States Senior District Judge for Northern District of California, by designation.